Filed 8/21/20  In re A.M. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.M. et al., Persons Coming Under the Juvenile Court Law. | B304330 (Los Angeles County Super. Ct. Nos. CK96950E CK96950F) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>M.M.,<br><br>　　　Defendant and Appellant. | |

| In re A.M. et al., Persons Coming Under the Juvenile Court Law. | B305027 (Los Angeles County Super. Ct. Nos. CK96950E CK96950F) |
| --- | --- |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> C.D. et al., <br><br> Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County. Craig S. Barnes, Judge. Affirmed.

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant M.M.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant C.D.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

_____

These consolidated appeals follow the juvenile court's February 2020 orders terminating the parental rights of appellants C.D. (father) and M.M. (mother) to their five-year-old daughter A.M. (daughter) and four-year-old son C.M. (son).[1] Father makes one argument on appeal. He claims because it is unclear from the record what information was included in notices sent to Indian tribes under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.), the juvenile court's finding that the ICWA did not apply is not supported by substantial evidence. As a result, father states we must reverse the juvenile court's orders terminating parental rights. Mother makes no independent arguments on appeal but joins in father's argument. Other than their challenge to the court's ICWA finding, neither mother nor father challenges the propriety of the juvenile court's orders terminating parental rights. Thus, the sole issue before us is whether the juvenile court committed reversible error when it determined the ICWA did not apply in this case. We find no reversible error and affirm.

## BACKGROUND

The parties do not dispute the following facts and procedural history, most of which is recounted in the parties' briefs on appeal.

---

[1] In addition to mother's and father's appeals from the February 2020 orders terminating parental rights (termination appeals), mother also filed a notice of appeal from an earlier order denying a section 388 petition (388 appeal). In May 2020, we granted mother's request to consolidate the termination appeals and the 388 appeal under appeal No. B304330. Despite having appealed from the order denying her section 388 petition, mother does not challenge that order in her briefing on appeal, and we deem the issue forfeited.

1. **The Family**

In addition to daughter and son, mother and father are parents to three older children. Mother also has one other older child. Although only daughter and son are involved in this appeal, their four older siblings also were dependents of the juvenile court.

For almost two years after daughter was born and more than one year after son was born, father denied he was the father of either child and did not want to participate in the underlying proceedings. Similarly, mother initially reported father was not the father of daughter and claimed she did not know who fathered son. However, in September 2016, based on DNA testing, the juvenile court found father was the biological father of both daughter and son.

2. **Instant Proceedings**

In November 2014, soon after daughter was born, the Los Angeles County Department of Children and Family Services (Department) filed a petition under Welfare and Institutions Code section 300 on daughter's behalf.[2] Less than one year later, in September 2015, the Department filed a subsequent petition under section 342 on behalf of daughter and her older siblings. Soon after, the Department filed a section 300 petition on behalf of son, who was at the time only two months old. At various times during the early stages of the underlying proceedings, the juvenile court issued arrest warrants for mother and protective custody warrants for daughter and son because mother's whereabouts or the children's whereabouts were unknown for many months at a time.

_____

[2] Undesignated statutory references are to the Welfare and Institutions Code.

By February 2017, the juvenile court had sustained the two section 300 petitions and the section 342 petition. All told, the sustained counts alleged daughter's and son's siblings were dependents of the court because of father's violent conduct against mother, mother failed to comply with court orders and allowed father unlimited access to the siblings, mother physically assaulted an unrelated child and encouraged one of the siblings to assault an unrelated child, father sexually abused the siblings, and mother failed to protect the children from sexual abuse. Family reunification services were ordered, but ultimately proved unsuccessful and were terminated.

On February 27, 2020, the juvenile court found daughter and son were likely to be adopted, found no exception to termination of parental rights existed, and terminated mother 's and father's parental rights to daughter and son. Neither mother nor father challenges the substantial evidence supporting the juvenile court's February 27, 2020 orders terminating parental rights.

3.    **ICWA Facts and Proceedings**

In October 2014 (prior to the filing of the petition on daughter's behalf), mother reported daughter did not have Indian ancestry.

However, more than one year later, in March 2016, mother reported she may have Cherokee ancestry through her father and her grandmother, who was deceased. As a result, the juvenile court ordered the Department to provide notice to the Cherokee tribes and to investigate mother's possible Indian heritage. The following month, the Department reported it had been unable to investigate mother's possible Indian heritage because it had been

5

unable to gather sufficient information from mother's family. Mother had no tribal enrollment number information.

In March and April 2017, father and mother appealed from the juvenile court's 2017 jurisdiction, disposition, and status review findings. (Appeal No. B282756.) Before that appeal was heard, however, the parties stipulated to a remand with directions that the juvenile court order the Department to further investigate mother's claim of Cherokee heritage and effectuate proper ICWA notice. In May 2018, in compliance with this Court's directions on remand, the juvenile court again ordered the Department to investigate mother's claim of Cherokee heritage; to notify all designated tribes, the Bureau of Indian Affairs (BIA), and the Secretary of the Interior; and to submit all notices, signed return receipts, and responses to the juvenile court.

Soon after, in June 2018, the Department spoke with both mother and father regarding their potential Indian heritage. Mother was uncooperative and refused to provide any further information, stating the Department "does not need to know this information." On the other hand, father spoke with a Department social worker and reported his grandmother and grandfather, both of whom were deceased, were from Houston, Texas, and both had Indian heritage. Father stated his other grandmother could provide information regarding Indian heritage in her family. That same day, the social worker spoke with father's grandmother, who reported her family originally was from Georgia and had Cherokee heritage. Both father and his grandmother provided the social worker with family names and birth dates. On June 15, 2018, the Department mailed form

ICWA-030 to both mother and father and asked them to complete the form.

The following month, the Department sent by certified mail notice of an upcoming hearing to mother and father as well as to the Eastern Band of Cherokee Indians, Cherokee Nation, the United Keetoowah Band of Cherokee Indians in Oklahoma, and the BIA. Mother, father, the tribes, and the BIA sent back to the Department signed certified mail return receipts.

Although the record on appeal includes signed return receipts from the tribes and the BIA, the record does not include the actual ICWA notices sent to the tribes or the BIA. Nonetheless, in July 2018, the Department received letters from the Eastern Band of Cherokee Indians stating daughter and son were neither registered nor eligible to register as members of the tribe. Similarly, in August 2018, the Department received letters from the United Keetoowah Band of Cherokee Indians in Oklahoma stating daughter and son were not eligible for enrollment in the tribe or were not recognized as citizens of the tribe.

In January and March 2019, the Department filed reports with the court reiterating the Department had mailed ICWA notices to the three tribes and to the BIA and had received responses in return.

At the permanency planning hearing in August 2019 (which was later rescheduled for a contested hearing), the juvenile court and counsel discussed whether the ICWA applied to the case. Counsel for the Department referred to the Department's March 2019 report, noting it included "quite a bit of detail" as to the Department's ICWA notices. The court indicated it was reviewing the ICWA notices, stating, "I have before me the

7

ICWA notices." The court further stated, "The response from the Indian tribes would not support ICWA findings. The tribes have been identified as Cherokee, and there's also been a response from the Bureau of Indian Affairs, as well." Based on the information provided by the Department in its March 2019 report and the court's own review of the ICWA notices and responses to those notices, the juvenile court held the ICWA did not apply to either daughter or son.

Counsel for mother indicated he was not prepared to state a position on the court's ICWA ruling but would "look everything over before the next court date." Mother's counsel assured the court, "If I have any new information or note anything as I look through the record, I will raise that at the trial setting conference." The court encouraged counsel, stating, "Please do it. If there's more information, by all means, I want to make sure we address it," and, "The court will revisit ICWA any time it comes up in advance of the .26." After the August 2019 hearing, no ICWA challenges were raised below.

As previously noted, the contested permanency planning hearing was held in February 2020, at which time the juvenile court terminated mother's and father's parental rights to daughter and son. These appeals followed.

**DISCUSSION**

## 1.    **Applicable Law**

The ICWA seeks "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." (25 U.S.C. § 1902.) When the juvenile court knows or has reason to know that an Indian child is involved in the proceedings before the court, the ICWA requires that notice of the proceedings and the right to intervene be given to the Indian

child's tribe.  (25 U.S.C. § 1912(a).)  California law requires notice under the same circumstances.  (Welf. & Inst. Code, § 224.3, subd. (a).)

"Central to the protections ICWA provides is the determination that an Indian child is involved.  For purposes of ICWA, an 'Indian child' is an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe.  [Citations.]  Being an 'Indian child' is thus not necessarily determined by the child's race, ancestry, or 'blood quantum,' but depends rather 'on the child's political affiliation with a federally recognized Indian Tribe.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882 (*Austin J.*).)

"Under California law, the court and county child welfare department 'have an affirmative and continuing duty to inquire whether a child,' who is the subject of a juvenile dependency petition, 'is or may be an Indian child.' " (*Austin J.*, *supra*, 47 Cal.App.5th at p. 883.)  "California law also requires 'further inquiry regarding the possible Indian status of the child' when 'the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding.'  (§ 224.2, subd. (e))." (*Austin J.*, at p. 883.)

"In addition to the inquiry that is required in every dependency case from the outset and the 'further inquiry' required under California law when there is a 'reason to believe' an Indian child is involved, a third step—notice to Indian tribes—is required under ICWA and California law if and when 'the court knows or has reason to know that an Indian child is involved.' " (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 883–884.)  "The duty to

provide notice is narrower than the duty of inquiry.  Although the duty of inquiry applies to every 'child for whom a petition under Section 300, 601, or 602 may be or has been filed' (§ 224.2, subd. (a)), and the duty of further inquiry applies when there is a 'reason to believe that an Indian child is involved in a proceeding' (§ 224.2, subd. (e)), the duty to provide notice to Indian tribes applies only when one knows or has a 'reason to know . . . an Indian child is involved,' and only 'for hearings that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement.' (§ 224.3, subd. (a).)"  (*Austin J.*, p. 884.)

In 2018, our Legislature redefined "the 'reason to know' requirement that triggers the duty to give notice of the proceedings to Indian tribes." (*Austin J.*, *supra*, 47 Cal.App.5th at p. 884.)  These changes took effect on January 1, 2019 (*In re A.M.* (2020) 47 Cal.App.5th 303, 316) and mirrored existing federal regulations, which expressly rejected broader or more inclusive language "such as, ' "is *or could be* an Indian child" ' or ' "*may be* an Indian child" ' " (*Austin J.*, at p. 885).  California and federal regulations list the same six circumstances that constitute "reason to know" a child involved in a proceeding is an Indian child.  Section 224.2, subdivision (d) provides:  "There is reason to know a child involved in a proceeding is an Indian child under any of the following circumstances: [¶] (1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child. [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village. [¶] (3) Any participant

10

in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)–(6); see also 25 C.F.R. § 23.107(c) (2020); Cal. Rules of Court, rule 5.481(b)(1)(A)–(F).) "[T]ribal ancestry is not among the criteria for having a reason to know the child is an Indian child." (*Austin J.*, at p. 885.)

## 2.    Standard of Review

" 'The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.]' [Citation.] When, as is the case here, the facts are undisputed, we review independently whether the requirements of ICWA have been satisfied. [Citation.] However, we review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.*, *supra*, 47 Cal.App.5th at p. 314.) Under this standard, we uphold the juvenile court's findings if any substantial evidence, contradicted or uncontradicted, supports them. We must resolve all conflicts in favor of the court's determination and indulge all legitimate inferences in favor of affirmance. (*In re John V.* (1992) 5 Cal.App.4th 1201, 1212.)

"A notice violation under ICWA is subject to harmless error analysis. [Citation.] 'An appellant seeking reversal for lack of

11

proper ICWA notice must show a reasonable probability that he or she would have obtained a more favorable result in the absence of the error.' " (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 715.)

### 3.    No Reversible Error

Father challenges the juvenile court's August 2019 finding that the ICWA does not apply.[3]  Father claims the record does not contain substantial evidence to support the court's finding because the ICWA notices sent to the tribes are not in the record on appeal.  As discussed below, we conclude ICWA notice was not required and, assuming it was required, reasonable inferences adequately support the juvenile court's finding.

As noted above, ICWA notice is required when it is known or there is "reason to know" a child is an Indian child.  Here, there is no indication anyone knew daughter and son were Indian children.  Thus, the relevant inquiry is whether there was "reason to know" they were Indian children.

The record does not support a finding that any one of the six "reason to know" criteria enumerated above was present.  No one informed the court that daughter or son was an Indian child; neither the children nor their parents lived on a reservation or in an Alaska Native village; no one informed the court that it had discovered information indicating daughter or son was an Indian

---

[3] The Department distinguishes between the juvenile court's explicit ICWA ruling at the August 2019 hearing and its identical but implicit ICWA ruling at the final permanency planning hearing in February 2020.  For present purposes, however, this is a distinction without consequence.  The applicable law and analysis is the same whether we consider the August 2019 ruling or the February 2020 ruling.

child; neither daughter nor son gave the court reason to know they were Indian children; neither daughter nor son was or had been a ward of a tribal court; there was no evidence mother, father, or the children possessed an identification card indicating membership or citizenship in an Indian tribe. (§ 224.2, subd. (d)(1)–(6); 25 C.F.R. § 23.107(c) (2020).) Although early in the proceedings, mother indicated she may have Cherokee ancestry and, later, father and his grandmother stated there was Indian heritage on his side of the family, a suggestion or statement of Indian ancestry is insufficient to trigger the ICWA notice requirement. "[T]ribal ancestry is not among the criteria for having a reason to know the child is an Indian child." (*Austin J.*, *supra*, 47 Cal.App.5th at p. 885.)

Thus, even if we assume the Department's ICWA notices were insufficient, any error was harmless because notice was not required. Moreover, it is undisputed the Department sent ICWA notices to the Cherokee tribes and the BIA, the Department received responses to those notices, and the juvenile court reviewed the notices and responses in court at the August 2019 permanency planning hearing. Contrary to father's contention on appeal, the juvenile court did not rely solely on representations made by the Department. Rather the court stated, "I have before me the ICWA notices," then determined the notices were sufficient and the ICWA did not apply. No one objected to the court's ruling. Although counsel for mother stated he took no position on the matter and would review the evidence and advise the court if he found anything objectionable or discovered new information, he never raised any objections or new evidence with the juvenile court. Thus, had ICWA notice been required, the

13

record supports the reasonable inference that the Department's notices were sufficient.

**4.	Father's Reply Brief**

For the first time in his reply brief on appeal, father argues we must issue a limited remand so that the Department can conduct "further inquiry" under the ICWA. Although father did not brief this issue in his opening brief, mother confusingly expressed in her opening brief her intent to join in father's brief "for the purpose of acquiring a remand of the matter for proper inquiry and notice pursuant to the Indian Child Welfare Act." Because mother mentioned further inquiry, the Department addressed the issue briefly in its respondent's brief, noting father had not argued the point. Nonetheless, in his reply brief father argues strenuously we must remand to allow the Department to conduct further inquiry consistent with the ICWA. Father makes statutory construction arguments and contends *In re Austin J.*, *supra*, 47 Cal.App.5th 870 was incorrectly decided. We decline to address father's arguments made for the first time in his reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766.)

Although given ample opportunity to do so below, the parties did not challenge the juvenile court's August 2019 finding that ICWA did not apply. Mother's counsel indicated that if he found any issues concerning ICWA compliance he would raise them with the court. He never raised any such issues below. Now on appeal, aside from ICWA compliance, neither father nor mother challenges the juvenile court's orders terminating their parental rights to daughter and son. It is time to give the children the permanency they deserve.[4]

---

[4] It is worth mentioning it has not escaped our attention that this appeal and the consequent delay to daughter's and son's

14

## DISPOSITION

The February 27, 2020 orders are affirmed.

NOT TO BE PUBLISHED.


                                          LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.

---

adoptions likely could have been avoided had the ICWA notices been included in the record. Moreover, any perceived deficiency in the notices is purely speculative and could have been, but was not, challenged below by the parents. As discussed *ante* at pages 13–14, it is reasonable to infer the notices were sufficient.